UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YARMOUTH COMMONS ASSOCIATION,

        Plaintiff,        Case Number 16-12342
v.                                     Honorable David M. Lawson

PAMELA NORWOOD and UNITED STATES
OF AMERICA, INTERNAL REVENUE
SERVICE,

        Defendants,
and

UNITED STATES OF AMERICA,

        Cross-claimant,
v.

PAMELA NORWOOD,

        Cross-defendant,
and

UNITED STATES OF AMERICA,

        Counter-claimant,
v.

PAMELA NORWOOD and YARMOUTH
COMMONS ASSOCIATION,

        Counter-defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
CROSS MOTIONS FOR SUMMARY JUDGMENT**

      Under the Internal Revenue Code, the government is allowed to assert a lien against the property of a delinquent taxpayer, and sell that property to satisfy the unpaid tax obligation. The tax lien is perfected at the time it is assessed, and, with a few exceptions, no formal filing

requirement is necessary for the government to obtain priority over other interests. This case presents the question whether the plaintiff condominium association's lien against the unit of a taxpayer-owner for unpaid condominium assessments satisfies one of those exceptions. The plain language of the Internal Revenue Code compels an affirmative answer, but only as to the amount of the assessments recorded when the IRS filed its public notice of the tax lien. The association's assessment lien will take priority over the tax lien for the amount of the assessment recorded, but not for related costs and attorney's fees, which had not been fixed at the time the IRS's tax lien notice was made part of the public record.

I.

The basic facts of the case are undisputed. Defendant Pamela Norwood bought a condominium unit, which was part of the Yarmouth Commons Condominiums. Her unit was conveyed to her by a warranty deed on March 29, 2015. That deed described the unit by reference to the "Restated Master Deed" for the condominium property, which was recorded on November 19, 2003. That master deed memorializes an agreement by "two-thirds of the co-owners and mortgagees of record" that "Yarmouth Commons Condominium . . . shall be held, conveyed, . . . encumbered, . . . or in any other manner utilized, subject to the provisions of the [Michigan Condominium Act], and to the covenants, conditions, restrictions, uses, limitations, and affirmative obligations set forth in this Master Deed and Exhibits 'A' and 'B' hereto."

Among other things, Exhibit A, the association's bylaws, memorialized the consent of the co-owners to provisions stating that "the Association may enforce collection of delinquent assessments by a suit at law for a money judgment or by foreclosure of the statutory lien that secures payment of assessments." Another provision states that "[e]ach Co-owner, and every other person

who from time to time has any interest in the Project, shall be deemed to have granted to the Association the unqualified right to elect to foreclose the lien securing payment of assessments either by judicial action or by advertisement."

On September 1, 2015, plaintiff Yarmouth Commons Association assessed condominium association fees due from Norwood that added up to $1,490. Those amounts constituted expenses of the association and late fees from September 1, 2015 to January 10, 2016. On January 28, 2016, the Association recorded a notice of lien with the Register of Deeds for Macomb County, Michigan. The notice stated that the lien was in the amount of $1,490 for "unpaid assessments," but that amount was "exclusive of interest, costs, attorney fees and any future assessments which may become due."

On April 6, 2015, the IRS made an assessment of past due income taxes against Norwood for the 2009 tax year that Norwood failed to pay. However, notice of that assessment was not made public until February 8, 2016, when the IRS recorded a Notice of Federal Tax Lien with the Macomb County Register of Deeds against the property of Pamela Norwood for her federal income tax liability for 2009. That notice stated the amount of back taxes then due as $67,340.88.

There appears to have been some pre-suit contact between counsel for the parties about lien priorities. Included in those discussions was the Macomb County treasurer, to whom property taxes on the unit also were owed. However, they were unable to resolve that question, presumably because Norwood's equity in the unit was less than the total amount of the liens. The plaintiff then put the question to the test by filing suit in state court.

The government removed the case to this Court and filed a counter-claim against the condominium association, and a cross-claim against Norwood for payment of the past due taxes.

Norwood failed to respond to the complaint, and the Court granted the government's motion for a default judgment on its cross-claim. The parties, except Norwood, stipulated that the assessment by Macomb County for unpaid property taxes had priority over the interests of the condominium association and the IRS, and the County was dismissed from the case. After a brief period of discovery, the parties filed their cross motions for summary judgment.

## II.

The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). However, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The parties have not seriously contested the basic facts of the case on the question of priority. Where, as here, the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

### A.

A person who fails to pay her taxes after the government makes a demand will have the amount of the tax become "'a lien in favor of the United States upon all property and rights to

property, whether real or personal, belonging to such person.'" *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000) (quoting 26 U.S.C. § 6321). The property interests to which the tax lien attaches are created by state law, but "'federal law determines whether and to what extent those interests will be taxed.'" *Ibid.* (quoting *United States v. Irvine*, 511 U.S. 224, 238 (1994)).

Moreover, "[t]he priority of a federal tax lien against competing claims is governed by federal law." *Ibid.*; *see also United States v. Dishman Indep. Oil, Inc.*, 46 F.3d 523, 526 (6th Cir. 1995). And "[w]hen there is a competition between a federal tax lien and a state law lien, priority is determined by the general rule that 'the first in time is the first in right.'" *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1176 (6th Cir. 1990) (quoting *United States v. City of New Britain*, 347 U.S. 81, 85 (1954)).

Another general rule is that a "federal tax lien need not be filed to gain priority over other interests; it is perfected at the time the lien is assessed." *Ibid.* (citing 26 U.S.C. § 6322). However, the IRC creates an exception to that general rule, stating that a tax lien "shall not be valid as against any purchaser, holder of *a security interest*, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a) (emphasis added).

Section 6323(h) defines the term "security interest" as "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability," and it then expands on that definition with the following criteria:

> "A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth."

26 U.S.C. § 6323(h)(1). Courts agree that a creditor relying on the security interest exception "must establish that its interest satisfies four conditions: (1) that the security interest was acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss; (2) that the property to which the security interest was to attach was in existence at the time the tax lien was filed; (3) that the security interest was, at the time of the tax lien filing, protected under state law against a judgment lien arising out of an unsecured obligation; and (4) that the holder of the security interest parted with money or money's worth." *Litton Indus. Automation Sys., Inc. v. Nationwide Power Corp.*, 106 F.3d 366, 368 (11th Cir. 1997) (quoting *Haas v. Internal Revenue Serv. (In re Haas)*, 31 F.3d 1081, 1085 (11th Cir. 1994)).

Yarmouth Commons argues that (1) its lien is a "security interest" as defined in 26 U.S.C. § 6323(a), because it arose from a contractual agreement to pay assessments imposed on all condominium owners by the recorded master deed and the association bylaws; (2) priority of that lien is assured by section 6323(a) against a federal tax lien where the security interest is perfected before a notice of tax lien is recorded; and (3) the determination of priority is made by reference to rules of federal law, and a contrary priority provision of the Michigan Condominium Act has no impact on the Court's assessment of priority. Yarmouth Commons also contends that it is entitled under the Condominium Act to recover its attorney's fees incurred during efforts to collect the assessment, notwithstanding that the notice of lien did not state the amount of any such fees.

The government argues that (1) priority of competing liens under federal law, where one of the liens is a federal tax lien, is determined by the general rule of "first in time, first in right"; (2) both liens arose, under the applicable laws allowing them, at the time of assessment, and the tax obligation in this case was assessed before the assessment for condominium fees; (3) the assessment

for condominium fees was not "choate," as required by federal law, until the notice of the condominium lien was recorded on January 29, 2016; and (4) the exception under 26 U.S.C. § 6323(a), which protects certain holders of "security interests" from preemption by unrecorded federal tax liens, does not apply in this case, because the condominium lien is not a "security interest" as defined by the statute, since (a) the lien interest was not "acquired by contract," but is instead a "statutory lien" that arose by operation of law, and (b) the lien also is not any form of mortgage or other secured interest (e.g., as evidenced by a financing statements filed according to the U.C.C.).

Both sides rely on cases deciding priority disputes that arose under the Bankruptcy Code, presumably because there is scant authority on this precise issue under the tax code. However, for reasons discussed below, the bankruptcy cases do not provide much guidance. The analysis must focus on the language of the statutes governing *this* case, which are found in the Internal Revenue Code.

B.

Of the four elements necessary to establish a qualifying security interest under section 6323(h)(1), the second — that Norwood's condominium unit "was in existence at the time the tax lien was filed" — certainly is not in dispute. The government takes issue with the other elements.

The first element likewise has been established. Based on a plain reading of the words of the statute according to their ordinary meaning, Yarmouth Commons's lien interest was "acquired by contract for the purpose of securing payment . . . of an obligation." The government disputes this proposition, but there are several reasons for holding otherwise. *First*, it is undisputed that the lien here was obtained for the purpose of securing payment by defendant Norwood of delinquent

condominium association assessments; that part of the definition is met. *See Litton Indus.*, 106 F.3d at 368.

*Second*, contrary to the government's assertion, the interest was one "acquired by contract." The term "contract" is not assigned a definition in the Internal Revenue Code's general definitions section, 26 U.S.C. § 7701, or the Dictionary Act, 1 U.S.C. § 1. Where words used in a statute are not explicitly defined, the Court assumes, absent any indications to the contrary, that those terms are used according to their ordinary meaning. *Mohamad v. Palestinian Authority*, 566 U.S. 449, 132 S. Ct. 1702, 1706-07 (2012) ("Because the [Terror Victim Protection Act] does not define the term 'individual,' we look first to the word's ordinary meaning."); *FCC v. AT & T Inc.*, 562 U.S. 397, 397 (2011) ("When a statute does not define a term, the Court typically 'give[s] the phrase its ordinary meaning.'" (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)). In ordinary usage, the term "contract" denotes "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." Black's Law Dictionary (10th ed. 2014).

The condominium association's restated master deed qualifies as an "agreement between two or more parties," where it states that it was recorded "with approval of two-thirds of the co-owners and mortgagees of record," and that those record owners consented to the imposition of all the conditions and covenants embodied in the master deed. The master deed also "creates obligations that are enforceable . . . at law" where it cites the Condominium Act and recites the co-owners' agreement that "Yarmouth Commons Condominium . . . shall be held, conveyed, . . . encumbered, . . . or in any other manner utilized, subject to the provisions of the [Michigan Condominium Act], and to the covenants, conditions, restrictions, uses, limitations, and affirmative obligations set forth in this Master Deed and Exhibits 'A' and 'B' hereto." *See* Mich. Comp. Laws § 559.208(1) (which

states that unpaid condominium assessments authorized by the bylaws "constitute a lien upon the unit or units in the project owned by the co-owner at the time of the assessment").

Moreover, under Michigan law, condominium association bylaws are considered a "binding contract" between unit owners and the association. *Tuscany Grove Ass'n v. Gasperoni*, No. 314663, 2014 WL 2880282, at *3 (Mich. Ct. App. June 24, 2014) (reasoning that "[t]he Association was formed as a nonprofit corporation. 'The bylaws of a corporation . . . constitute a binding contract between the corporation and its shareholders.' The Bylaws in the case are such a contract.") (quoting *Allied Supermarkets, Inc. v. Grocer's Dairy Co.*, 45 Mich. App 310, 315, 206 NW2d 490 (1973), *aff'd* 391 Mich. 729 (1974)); *see also Tuscany Grove Ass'n v. Peraino*, 311 Mich. App. 389, 393, 875 N.W.2d 234, 236 (2015) ("Condominium bylaws are interpreted according to the rules governing the interpretation of a contract.").

Yarmouth Commons's bylaws recorded the consent by the co-owners to provisions stating that "the Association may enforce collection of delinquent assessments by a suit at law for a money judgment or by foreclosure of the statutory lien that secures payment of assessments." The bylaws also state that "[e]ach Co-owner, and every other person who from time to time has any interest in the Project, shall be deemed to have granted to the Association the unqualified right to elect to foreclose the lien securing payment of assessments either by judicial action or by advertisement." Norwood accepted an obligation to abide by those provisions of the recorded master deed when the property was conveyed to her by a warranty deed that described the condominium unit by a specific reference to the master deed.

*Third*, although the government contends that there is no evidence that Norwood was a party to the ratification of the restated master deed as recorded, no such requirement is imposed by section

6323(a), which only states that the interest must be "acquired by contract." Here, the master deed certainly meets the definition of a "contract" by the ordinary meaning of that term, because it expresses the "agreement" of "two or more parties" and "created obligations" which Norwood later accepted as duties inherent to her purchase of the condominium unit.

The government urges the Court to draw a distinction between a "security interest" and a "statutory lien," arguing that Yarmouth Commons's interest is created by the latter and not the former. The government reasons that a statutory lien is disqualified from satisfying the elements of the priority statute, because the interest must be one or the other (i.e. *either* a security interest *or* a statutory lien), and cannot be both. The government draws support for that proposition mainly from four recent decisions by bankruptcy and district courts concluding that condominium association levies for unpaid fees did not enjoy priority over the liens of other creditors in bankruptcy. *See In re Keise*, 564 B.R. 255, 265 (Bankr. D.N.J. 2017); *Holmes v. Cmty. Hills Condo. Association*, No. 15-6834, 2016 WL 4950993, at *4 (D.N.J. Sept. 16, 2016); *In re Green*, 516 B.R. 347, 351-52 (E.D. La. 2014); *Young v. 1200 Buena Vista Condominiums*, 477 B.R. 594, 603 (W.D. Pa. 2012). Those cases, however, were decided under 1322(b) of the Bankruptcy Code. The language of that statute does not parallel IRC section 6323(a), which is reason enough here to discount the application of the cases construing it. Moreover, 11 U.S.C. § 1322(b) serves a different purpose, and there is no authority suggesting that Congress intended the two provisions to be construed together.

All of those cases addressed a narrow issue of statutory construction under the Bankruptcy Code, which is the scope of an exemption from the Code's general "cram down" provision granted by 11 U.S.C. § 1322(b)(2). In each case, the debtor sought to avoid or "strip down" liens recorded

by their condominium associations, under the theory that those obligations were "statutory" or "judicial" liens as defined under the code, and not "security interests" subject to the safe harbor of section 1322(b)(2). None of the cases construed the Internal Revenue Code's Section 6323(a), and none of those courts were called upon to resolve any priority dispute between the IRS and a condominium association.

The Bankruptcy Code recognizes "three types of liens: (1) statutory liens, (2) judicial liens, and (3) security interests." *In re Green*, 516 B.R. at 349. A "statutory lien is a lien that arises 'solely by force of a statute on specified circumstances or conditions'"; a "'judicial lien' is a lien 'obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding'"; and, the "term 'security interest' means a lien that is 'created by an agreement.'" *Ibid.* (citing 11 U.S.C. 101(53), (36), (51)). "Although there is no provision of the [Bankruptcy] Code stating that the three types of liens — statutory, judicial and consensual — are mutually exclusive, legislative history indicates that a single lien can fall in only one of these categories." *In re Keise*, 564 B.R. at 257; *see also In re Darnell*, 834 F.2d 1263, 1265 n.4 (6th Cir. 1987) ("A 'statutory lien' is defined in the [Bankruptcy] Code as a 'lien arising solely by force of a statute on specified circumstances or conditions . . . but does not include [a] security interest [a lien created by agreement] or judicial lien [a lien obtained by judgment, levy, sequestration, or other legal or equitable proceeding].'" (quoting 11 U.S.C. § 101(47) (alterations in original))). "The precise type of lien at issue is significant [in bankruptcy] because the bankruptcy code allows a debtor to cram-down a claim if the claim meets certain requirements. Specifically, § 1322(b)(2) provides that a plan may 'modify the rights of holders of secured claims, other than a claim secured *only by a security interest* in real property that is the debtor's principal residence.'" *Id.* at 258 (emphasis in original). "Thus, assuming the other

requirements of § 1322(b)(2) are met, the nature of a lien, i.e., whether it is a consensual lien (security interest), dictates whether modification of the underlying secured claim is permitted." *Ibid.*

The decisions construing Bankruptcy Code section 1322(b)(2) focus considerable attention on the distinction between a "security interest" and a "statutory lien," because obligations meeting those definitions receive distinctly different treatment in that context, and the categories are construed by bankruptcy courts to be mutually exclusive. And, as noted earlier, the Bankruptcy Code contains a definition section that draws those sharp distinctions. *See* 11 U.S.C. § 101(51) (defining a "security interest"); 11 U.S.C. § 101(37) (defining a "lien"); 11 U.S.C. § 101(53) (defining a "statutory lien" as specifically excluding a security interest or judicial lien).

IRC section 6323, by contrast, not only does not distinguish between a "security interest" and a "statutory lien," it also affords the *same* treatment to both a "security interest" and a "judicial lien," where those latter categories of interests are given *different* treatment under section 1322(b)(2). Nothing in section 6323(h)(1)'s definition of "security interest" excludes interests that arise partly or wholly by operation of law. Instead, the language employed is sweeping and inclusive. For example, the definition embraces "*any interest* acquired by contract," and it further states that a "security interest exists *at any time*." The cases that have considered this provision recognize that the "the statute's purpose, [is] to protect the specific lienholders identified by the statute from the harsh effects of the common law 'secret lien,' not to entirely preclude holders of state liens that do not meet any of the statutory definitions in § 6323(h) from claiming priority over a recorded tax lien." *U.S. Bank Nat. Association v. Bickford*, No. 13-294, 2015 WL 1470879, at *2 n.5 (D.N.H. Mar. 31, 2015) (citing *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 89 (1963))

(collecting cases). The artificial distinction urged by the government is contrary to that protective purpose and not evident anywhere in the plain language of the statute.

The government asserts that the Sixth Circuit implicitly recognized a distinction between a "security interest" and a "statutory lien" in the *Terwilliger's Catering* decision. But that case is distinguishable because there the state law claim was an inchoate, unrecorded demand by a state authority for collection of unpaid taxes as a condition of transferring a liquor license. *See In re Terwilliger's Catering*, 911 F.2d at 1177 ("The state's lien interest is only enforceable when the license holder applies to the Commission to renew the license. Further . . . the state's lien interest is defeated if the taxpayer either pays the tax or posts a bond guaranteeing the payment of a contested tax liability."). The court of appeals described the issue in *Terwilliger* as follows: "The United States' claim is based on a valid, perfected federal tax lien filed against all of the debtor's property prior to the bankruptcy proceedings. The state's claim is based on an Ohio statute that prohibits the Liquor Control Commission from approving the sale of a license until the licensee pays all taxes owed to the state." *Id.* at 1169. In a footnote, the court observed: "According to section 6323(a), the federal lien is not effective against 'any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.' The lien interest created by the state does not qualify under this provision." *Id.* at 1176 n.9. But the *Terwilliger* court was not called upon to determine whether a lien recorded against real property to collect unpaid assessments by a condominium association constituted a "security interest." Moreover, the court's reasoning focused on whether the liquor license was "property" as defined by the Internal Revenue Code, and whether the interest asserted by the state was "choate" when the tax debt was assessed. Nor was the *Terwilliger* court

called upon to decide whether there is any distinction between an interest "acquired by contract" or one arising by operation of law.

Among the other cases cited by the parties, to the extent they are instructive at all, the weight of authority favors the view that a condo association's interest in collection of unpaid assessments is one acquired "by agreement." All of those cases but two held that the lien interest arose as a result of an agreement between the condominium owner and association, via the master deed, or that the interest arose by the concurrent effect of the parties' agreement and the operation of law.

The decision in *In re Green* was otherwise, but that case is distinguishable because it turned on the meaning of the term "privilege" as used in the operative statute, which is a legal term of art peculiar to the law of the State of Louisiana that is not used anywhere else, and the court concluded that the term was recognized under state law as a synonym for "statutory lien." *In re Green*, 516 B.R. at 350-51 ("While the term 'privilege' is unique to Louisiana law, it is synonymous with the term 'statutory lien,' which is used outside of Louisiana."). In this case, the government has not pointed to any authority holding that the phrases "security interest" and "statutory lien" are synonymous (in fact it vigorously contends that they are not).

The court in *Young v. 1200 Buena Vista Condominiums* adopted a contrary reading of section 11 U.S.C. § 1322(b)(2). The court explained:

> Under the Uniform Condominium Act, which is applicable to the instant dispute, "[t]he association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due." As the Bankruptcy Court in this case noted, the statutory language not only automatically grants the Association a lien from the time the assessment becomes due, but it allows for the lien to be foreclosed in like manner as a mortgage on real estate.

477 B.R. at 599 (quoting 68 Pa. Stat. § 3315(a)). The facts in *Young* are not much different than the circumstances here, but the holding is contrary to the weight of authority among the other decisions cited. Also, as previously discussed, the instructive value of all these cases is limited due to the distinctly different language used in the statutes that were considered by them, compared with section 6323(a).

Moreover, none of those bankruptcy courts, including the *Young* court, were called upon to arbitrate any question of priority between the federal government and a party with a lien obligation recorded under state law; instead, all of them involved attempts by a debtor to "cram down" condominium association liens that were competing for recovery with a primary mortgage lender (in most cases where the mortgages were "under water" due to a loan value that far exceeded the marketable value of the property), on the theory that the condominium liens were not entitled to the benefit of the limited exemption under section 1322(b)(2).

In the only decision cited by the parties that actually construed the language of section 6323, the district court held (at least implicitly) that the condominium association's recorded lien was entitled to priority over the later filed federal tax lien, but only to the extent of the amount specifically stated in the notice of condominium lien, not including any indeterminate future assessments. *See In re Guajardo*, No. 15-31452, 2016 WL 943613, at *4 (Bankr. N.D. Cal. Mar. 11, 2016).

The Michigan Condominium Act lends support to Yarmouth Commons's attempt to foreclose the assessment lien. But that statutory assist does not render the lien any less a product of a contract or disqualify it as a security interest recognized by IRC section 6323(a).

C.

As noted above, section 6323(h)(1) also requires that the security interest be protected under state law against a judgment lien asserted by an unsecured creditor. Language in the Michigan Condominium Act may call that requirement into question. The statute states that condominium assessment liens take priority over "other liens *except tax liens on the condominium unit in favor of any state or federal taxing authority*." Mich. Comp. Laws § 559.208(1) (emphasis added). That language suggests that a Michigan state court would not afford priority to a condominium lien against a federal tax lien regardless of the order in which they were recorded.

However, as the plaintiff correctly points out, federal courts apply federal law in such priority disputes, without regard to the effect of any state pronouncements on the question. *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000) ("The priority of a federal tax lien against competing claims is governed by federal law."); *United States v. Dishman Indep. Oil, Inc.*, 46 F.3d 523, 526 (6th Cir. 1995) ("It is undisputed that when a federal lien is involved, the relative priority between competing liens is a question of federal law determined by the principle 'the first in time is the first in right.'" (quoting *United States v. City of New Britain*, 347 U.S. 81, 85 (1954)). And against other liens generally (other than tax liens), the condominium association's interest certainly was "protected under local law against a subsequent judgment lien arising out of an unsecured obligation," 26 U.S.C. § 6323(h)(1), where the statute states that "[s]ums assessed to a co-owner by the association . . . constitute a lien upon the unit . . . at the time of the assessment *before other liens*," and the "lien may be foreclosed by an action or by advertisement by the association of co-owners in the name of the condominium project on behalf of the other co-owners." Mich. Comp. Laws § 559.208(1). The statute therefore explicitly affords the condominium lien priority over other

liens generally (except for tax liens or a first mortgage), and it offers a direct avenue for enforcing the lien by way of a foreclosure proceeding.

D.

The question whether the condominium association "part[ed] with money or money's worth" was not briefed by the parties. But it is evident from the record that, at least by the time the condominium lien was filed, Yarmouth Commons had "parted with money or money's worth" by virtue of expenses paid or incurred on Norwood's behalf that were necessary to maintain the common portions of the condominium property, at least to the extent of the $1,490 in unpaid assessments stated in the notice of lien. This element of the "security interest" definition therefore is satisfied.

E.

The recorded notice of lien rendered the plaintiff's interest in collection of its $1,490 in unpaid assessments sufficiently choate as of January 28, 2016 for Yarmouth Commons to obtain priority over the later filed notice of tax lien, but only as to the amount stated in that notice. "A state-created lien is choate only when 'there is nothing more to be done,' i.e., 'when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *Dishman*, 46 F.3d at 526 (quoting *New Britain*, 347 U.S. 81, at 84). "Even when these factors are met, however, the state lien holder must show that he had the right to enforce the lien at some time prior to the attachment of the federal lien." *In re Terwilliger's Catering*, 911 F.2d at 1176. In this case, the identity of the lienor (the plaintiff), the property subject to the lien (Norwood's condominium unit), and the amount of the lien ($1,490) all plainly were stated in the recorded notice of lien. And there were no prerequisites under the applicable state law (such as any notice period or other

procedural delays) that could inject any doubt about the plaintiff's immediate right to enforce its lien. *See* Mich. Comp. Laws § 559.208(1). ("The lien may be foreclosed by an action or by advertisement by the association of co-owners in the name of the condominium project on behalf of the other co-owners.").

However, the condominium association is not entitled to priority as to any amounts beyond the $1,490 stated in the notice of lien, because it has not provided any evidence to suggest that such amounts were rendered to a sum certain before the government filed its notice of tax lien. *See In re Guajardo*, 2016 WL 943613, at *2 ("[T]he IRS prevails over the HOA, except as to the $12,839.95 amount reflected in the March 2011 HOA Lien."). The Supreme Court, in fact, previously confronted and rejected a similar claim by a lien holder to attorney's fees incurred when foreclosing a mortgage. *United States v. Equitable Life Assur. Soc. of U.S.*, 384 U.S. 323, 331 (1966). The lien holder's argument was indistinguishable from the plaintiff's position in this case. The Court held: "While we believe that the established practice of awarding costs in the ordinary sense fairly renders those items an incident of the rights of those protected under section 6323, we see no warrant either in the intent of section 6323 or the practices prevailing among the States at the time of its enactment to treat attorneys' fees as a right entitled to priority over a federal tax lien. We hold that the federal tax lien is entitled to priority over the claim for the attorney's fee under [the applicable state law]." *Ibid.*

Yarmouth Commons has not suggested any basis for distinguishing or questioning that settled law. Its priority position extends only to the amount of the recorded assessment, which in this case is $1,490.

III.

The plaintiff's lien for condominium assessments qualifies as a "security interest" within the meaning of 26 U.S.C. § 6323(a) and (h). The assessment, therefore, is entitled to priority over the federal tax line, which was not made public until after the plaintiff's lien notice was filed. But the priority position is limited to the amount stated in the lien notice.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt. #24] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the government's motion for summary judgment [dkt. #27] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the assessment lien of plaintiff Yarmouth Commons Association takes priority over the federal tax lien filed by the United States, but only to the extent of $1,490.

It is further **ORDERED** that the parties must file appropriate motions for entry of judgment **on or before December 22, 2017**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   December 8, 2017

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 8, 2017.

s/Susan Pinkowski  
SUSAN PINKOWSKI